United States Projector & Electronics Corporation v. Commissioner.
United States Projector & Electronics Corp. v. Commissioner
Docket No. 7027-65.
United States Tax Court
T.C. Memo 1969-102; 1969 Tax Ct. Memo LEXIS 195; 28 T.C.M. (CCH) 549; T.C.M. (RIA) 69102; May 19, 1969, Filed *195 James V. O'Connor, for the petitioner. Walter John Howard, Jr., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined the following deficiencies and penalties with respect to petitioner's income taxes for the taxable years 1959 through 1961, inclusive: Year
Deficiency
PenaltySec. 6651(a)
PenaltySec. 6653(a)
1959
$23,274.16
$1,163.71
1960
4,597.23
$353.83
453.83
1961 15,216.92
760.85
Totals
$43,088.31
$353.83
$2,378.39
Petitioner not only contests these deficiencies but seeks the following overpayments: Year
Overpayment
1959
$4,281.57
1960
4,479.38
1961 221.27
$8,982.22 The total amount in controversy is thus $54,802.75. Petitioner filed its Federal income tax return for 1962 in August 1963. Previously a revenue agent had examined petitioner's returns for 1959 through 1961 and had proposed adjustments to income. On its return for 1962 petitioner indicated substantial acceptance of such adjustments. In December 1963 petitioner submitted claims for refund. It claimed carrybacks of a 1962 net operating loss to the years 1959, 1960, and 1961. The *196 claims were based on deductions arising from purported rescissions of sales reported on its returns for 1960 and 1961. The sole issue for decision is whether petitioner was entitled to a deduction of $126,441.50 in 1962. 550 Findings of Fact Some of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner is a calendar-year taxpayer. It filed its Federal corporate income tax returns for all periods here involved on an accrual method of accounting with the district director of internal revenue, Tacoma, Washington. Petitioner's principal place of business was Federal Way, Washington, when it filed its petition in this case. The tax return for 1960 was filed on June 19, 1961, which was four days after the expiration of an extension of time to file approved by the district director of internal revenue. John Raymond Cissna (hereinafter referred to only as Cissna) is a lawyer. During the taxable years in question he was president of petitioner and owned 67.9 percent of the outstanding stock. Cissna is also president and chairman of the board of Federal Old Line Insurance Company (hereinafter *197 referred to as FOL). He incorporated the company about 31 years ago. Federal Association, Inc. (hereinafter referred to as FAI) held the master general agency contract for FOL. There are 19 wholly-owned subsidiary corporations of FAI. These subsidiaries include 99 Developments Corporation, University Sound Films, Inc., United Marketing Corporation, Riley Finance Corporation, and Builders of Communities. FOL and FAI decided to develop a process of projecting a single image from a frame of 16 millimeter movie film. The process would be useful as an audio visual aid in training life insurance salesmen. It was further envisioned that the salesmen would sell the projection equipment together with their customary product, life insurance policies. Prior to 1959 it was learned that Adslide Projector Company in Chicago, Illinois (hereinafter referred to only as Adslide) held patents on a projection process involving 16 millimeter film and the process could be purchased. FOL and FAI did not have sufficient funds to acquire the process. Cissna and other individuals purchased the assets of Adslide for a total cost of $36,427.63. They transferred these assets, together with $13,750 in cash *198 and other assets, to the recently incorporated petitioner. The investors received shares of stock of petitioner in exchange for the assets which they relinquished. The total investment to the share-holders was $50,177.63. The assets so transferred included an inventory of cameras, projectors, film, patents, tools, and dies. Petitioner capitalized these assets on its books at $200,000. At the time the process was acquired from Adslide, it was not sufficiently developed for public distribution. The primary need was to perfect a method for editing a roll of 16 millimeter film so that a person could select only specific pictures out of 2,000 frames on a roll. Petitioner under-took to develop the equipment that would perform the necessary editing. This equipment was referred to as Pix-A-Matic. Petitioner alone did not have sufficient funds to complete the development of Pix-A-Matic. Petitioner did have some completed equipment such as cameras and projectors. In 1960 and 1961 petitioner entered into the following transactions with the five afore mentioned subsidiaries of FAI: Invoice No. and Date
Amount ofSale
Cost of Sale
Gross Profit
Principal Item Sold
99 Developments Corp.
506 - 3/17/60
$ 1,920.00
$ 1,345.00
$ 575.00
Keystone Cameras & Pixalogs
646 - 5/31/60
4,560.00
3,230.00
1,330.00
Keystone Cameras
651 - 5/31/60
960.00
680.00
280.00
Silver Star Cameras
653 - 5/31/60
6,000.00
3,000.00
3,000.00
35 mm - 4-U Cameras
655 - 5/31/60
14,400.00
10,200.00
4,200.00
Silver Star Cameras
688 - 11/30/60
20,000.00
20,000.00
Sales Franchise
691 - 12/30/60
6,000.00
6,000.00
Sales Franchise
University Sound Films
692 - 3/20/61
30,625.00
22,600.00
8,025.00
Silver Star Cameras
693 - 3/20/61
1,680.00
1,216.00
464.00
Phones. & Tape Rocorders
703 - 6/1/61
13,452.50
9,955.00
3,497.50
Centapix
GJ-13 - 12/31/61
8,190.00
8,190.00
Franchise
United Marketing Company
505 - 3/17/60
2,040.00
1,515.00
525.00
Keystone Cameras & Pixalogs
629 - 4/25/60
3,360.00
2,380.00
980.00
Keystone Cameras
654 - 5/31/60
6,000.00
3,000.00
3,000.00
35 mm - 4-U Cameras
656 - 5/31/60
14,400.00
10,200.00
4,200.00
Keystone Cameras
687 - 11/30/60
20,000.00
20,000.00
Sales Franchise
690 - 12/31/60
6,000.00
6,000.00
Sales Franchise
Riley Finance Company
507 - 3/17/60
2,040.00
1,515.00
525.00
Keystone Cameras & Pixalogs
628 - 4/25/60
3,360.00
2,380.00
980.00
Keystone Cameras
652 - 5/31/60
6,000.00
3,000.00
3,000.00
35 mm - 4-U Cameras
657 - 5/31/60
14,400.00
10,200.00
4,200.00
Silver Star Cameras
686 - 11/30/60
20,000.00
20,000.00
Sales Franchise
689 - 12/31/60
6,000.00
6,000.00
Sales Franchise
Builders of Communities
630 - 4/25/60 5,040.00
3,570.00
1,470.00
Keystone Cameras
Totals $216,427.50
$89,986.00
$126,441.50
*199 Petitioner invoiced the preceding transactions. Its bookkeeper recorded the transactions as sales on the books of original entry and on the ledgers. Petitioner reported the income earned from these transactions on its Federal income tax returns for 1960 and 1961. Only two of the five purchasing subsidiaries kept formal records such as general ledgers. These two corporations, University Sound Films and Builders of Communities, both recorded the acquisitions as purchases. Two other subsidiaries, Riley Finance Corporation and 99 Developments Corporation, reported the transactions on their Federal income tax returns as loans rather than purchases. Riley Finance Corporation, however, had annotated the items as "purchases" in its checkbook. The subsidiaries paid petitioner in cash for the above purchases. Petitioner used the cash for several purposes, especially the further development of Pix-A-Matic. Some cash was used for the payment of dividends. The dividend record of petitioner for the years here involved was as follows: DateDeclared
AmountDeclared
Date Paid
Amount Paid
1959
$ 2,267.50
1959
$ 2,267.50
1960
6,802.50
1960
6,222.50
1961 6,802.50 1961 2,409.50
$15,872.50
$10,899.50
*200 Development of the 16 millimeter slide projector was finished in 1965. At that time fifty machines were completed in Japan. Prior to petitioner's filing of its 1962 Federal income tax return, respondent's agent examined its returns for the years 1959, 1960, and 1961. The agent stated that petitioner had incorrectly capitalized the acquisition of the equipment from Cissna and others. The agent further proposed additional adjustments. Petitioner agreed to all these adjustments for the years 1959, 1960, and 1961. On August 15, 1963, and within the extension of time as approved by the district director, petitioner filed its income tax return for 1962. Petitioner's agreement to the adjustments proposed by the agent for the preceding three years was reflected on petitioner's 1962 return. Petitioner entered into a Sales and Franchise Agreement with four of the five aforementioned subsidiaries. Only Builders of Communities was not a party to the Agreement. On December 19, 1963, Charles H. Anderson gave to respondent's agent a statement signed by him. Anderson had been a vice-president of petitioner in 1959, 1960, and 1961 and during the early part of 1962. The statement related to the *201 foregoing Agreement under which petitioner agreed to make sales to the five subsidiaries. The statement read: The attached Sales and Franchise Agreement was executed as of the 17th day of November 1959, but in fact, was signed and witnessed on November 11, 1963 by the different parties signing thereon. The Agreement, in part, stated: 3. Since the success of the sales program contemplated by this agreement and the United Management Services program set forth in the Federal Association Board of Directors minutes of October 552 21, 1959 is, to a large degree, dependent upon the Purchasers' ability to provide the basic inventory of saleable and competitive priced projection and camera equipment, it is hereby mutually agreed by all parties that in the event the Seller is unable to provide the basic inventory of $250,000 and a continuing flow of merchandise thereafter, that the Purchasers shall have, at their option, the following lines of recourse: A. To declare this agreement null and void and to retain in their possession all equipment on hand as security for the full settlement of all amounts advanced to the Seller, the form of settlement to be negotiated within one year *202 of date thereof. B. To declare this agreement null and void and to liquidate said equipment at "the best price obtainable" and credit the proceeds against amounts advanced to the Seller and negotiate settlement of any balance due. UNITED STATES PROJECTOR & ELECTRONICS CORPORATION By /s/ Charles H. Anderson Charles H. Anderson, Vice President 99 DEVELOPMENT CORPORATION By /s/ Harold M. Rose Harold M. Rose, President UNITED MARKETING CORPORATION By /s/ Richard Gronning Richard Gronning, President RILEY FINANCE CORPORATION By /s/ Robert D. Riley Robert D. Riley, President UNIVERSITY SOUND FILMS, INC. By /s/ Louis F. Risley Louis F. Risley, President On November 11, 1963, the same parties entered into another agreement: In accordance with the explanations given relative to the change in program of Federal Shopping Way, Federal Old Line and other companies cooperating in the United Marketing Services program due to the Securities Exchange action, do hereby find it impossible to carry forward said program, Sales and Franchise Agreement of November 17, 1959 and do for these and the other reasons discussed give notice of cancellation and are desirous to void said *203 agreement and treat it as of no affect whatsoever. 1. It now will be impossible for some period in the future to carry forward the agency system and accordingly impossible and to no avail the provision for $250,000 of inventory as therein recited. 2. Without the merchandise aid and the transfer device, which you advise us cannot be completed due to the suspension of the carrying forward of said program due to the foregoing revisions by recently aforesaid investigation and points of disagreement, makes the sales and franchise agreement of no value to the undersigned corporations and that the same are by reason of the circumstances, not only impossible to carry forward, but by reason of the relationships between the companies there has been in fact no actual transaction insofar as a valid sale is concerned and the same should be rescinded, voided and treated of no affect whatsoever. That it is thereby expressly agreed that liabilities to the respective companies to place all parties in a position that accurately reflects their true relation as follows: 99 Developments Corpo- ration
$60,812.16
United Marketing Cor- poration
54,715.51
Riley Finance Corpora- tion
60,124.20
University Sound Films
42,862.12
*204 We the undersigned and individuals and in our representative capacities have read the foregoing and certified to said facts as an accurate recital of the understanding between the parties and the true state of affairs. That this agreement is executed as of the 14th day of November, 1962, but in fact, was signed and witnessed at later dates by the different parties signator hereto. 99 DEVELOPMENT CORPORATION By /s/ Harold M. Rose Harold M. Rose, President UNITED MARKETING CORPORATION By /s/ Richard Gronning Richard Gronning, President RILEY FINANCE CORPORATION By /s/ Robert D. Riley Robert D. Riley, President UNIVERSITY SOUND FILMS, INC. By /s/ Louis F. Risley Louis F. Risley, President Accepted: UNITED STATES PROJECTOR & ELECTRONICS CORPORATION By /s/ Charles H. Anderson Charles H. Anderson, Vice-President On December 16, 1963, petitioner submitted claims for refund to respondent's agent for filing with the district director. The claims were for the taxable years 1959, 553 1960, and 1961. The claims indicate acceptance of respondent's adjustments to income; however, they claim a carryback of a net operating loss of $146,343.78 incurred in the taxable year *205 1962. Included within this net operating loss is a deduction in the amount of $126,441.50. The deduction represents an attempt by petitioner to "void" for Federal income tax purposes amounts reported as sales to the five aforementioned subsidiaries of FAI. [1] Respondent has denied that petitioner is entitled to a deduction of $126,441.50 in 1962 which can be carried back as a net operating loss deduction to 1959, 1960, and 1961. Opinion The issue is whether petitioner should be allowed a deduction of $126,441.50 in 1962. We have encountered considerable difficulty in understanding the grounds on which petitioner has been presenting its case. It appears that petitioner is advancing two alternative grounds in support of its position. Petitioner apparently bases its first argument on the agreement dated November 11, 1963. The agreement purported to rescind, as of November 14, 1962, petitioner's *206 sales in 1960 and 1961 to the subsidiaries of FAI. Petitioner urges that as a consequence of the rescission agreement it is entitled to a deduction in 1962 of $126,441.50. This was the amount of its net sales to the five subsidiaries of FAI in 1960 and 1961. Assuming arguendo the agreement of November 11, 1963, did effect a rescission of the sales in 1960 and 1961, petitioner would still not be entitled to a deduction in 1962. When the partes signed the rescission agreement on November 11, 1963, the event occurred which purportedly fixed petitioner's liability to return amounts previously received from the subsidiaries of FAI. By making the purported rescission in 1963 retroactive to 1962, petitioner could not effect its intention to create a deduction accruable in 1962. If petitioner is entitled to accrue the deduction, such accrual would have to be made in a year subsequent to 1962. See ; . Petitioner's second argument appears to be that its transactions in 1960 and 1961 with the subsidiaries of FAI were not sales transactions. It is contended *207 that the subsidiaries were merely advancing money to petitioner to permit it to complete the necessary research and development of Pix-A-Matic. Petitioner contends that deliveries of equipment to the subsidiaries were only to provide security for the amounts received from the subsidiaries. Petitioner further argues that it erred in reporting on its Federal income tax returns for 1960 and 1961 receipts of such amounts as sales. Petitioner seeks to amend this alleged erroneous reporting by deducting the amounts of the sales on its 1962 return. The records of petitioner, which were introduced into evidence by respondent, overwhelmingly refute petitioner's contention that the transactions in 1960 and 1961 were not sales. Petitioner issued to the subsidiaries invoices characterizing the transactions as sales. It also recorded the transactions on its books as sales. The contention of petitioner is similar to the taxpayer's argument in (C.A. 4, 1962). The taxpayer's position in that case was that amounts which it had received from an affiliated corporation were loans rather than prepayments of rent. The Court of *208 Appeals for the Fourth Circuit stated: The corporate officers testified that the contemporaneous documentary entries were erroneous and that the transaction was in fact a loan, but the difficulty is that these declarations reflect hindsight and no evidence exists of a contemporaneous nature pointing to a loan. No note was executed, no interest was specified or collected and the financial records did not provide for such. * * * In short the record was either silent or in conflict with the intentions subsequently claimed by the corporate officers. Under the circumstances we cannot say that the trier of fact was clearly erroneous in its conclusion * * * The instant case is a situation similar to that found in the Kohler-Campbell case. In our case, as in the Kohler-Campbell case, no promissory note was ever executed with respect to the transactions, there was no agreement with respect to interest, and there was no specified time for repayment or collection. Furthermore, the contemporaneous bookkeeping of both petitioner and its customers treated the transactions as sales. 554 Petitioner cites only one case in its brief: *209 (C.A. 7, 1963), reversing in pertinent part a Memorandum Opinion of this Court. Petitioner suggests that the decision should be controlling in our case. In Consolidated-Hammer the taxpayer had entered into a contract with the United States Government. The contract called for partial payments to the taxpayer. The partial payments were subject to completion of certain testing requirements. As the Government made each partial payment it acquired title to parts, inventories, and work in process. The taxpayer reported its income on an accrual basis. The issue for decision was whether the partial payments were reportable as accrual income for income tax purposes upon receipt or only when delivery and acceptance of the products were made. Holding for the taxpayer on this issue, the Court of Appeals looked to the specific terms of the contract. According to the terms of the contract the taxpayer did not have a right to retain the partial payments until the products were finished and accepted. The Court of Appeals also rejected the Government's position that the partial payments were includable in gross income under the claim of right doctrine. We think that our case is distinguishable. The *210 sales in our case became completed transactions at the time petitioner received its payments. Petitioner has not produced any cogent evidence to the contrary. We cannot give any weight to the sales agreement dated November 17, 1959, which purported to make the sales contingent upon the seller's providing an inventory of $250,000 and a continuing flow of merchandise thereafter. The sales agreement in fact was not signed until after respondent's agent had undertaken an audit of petitioner's returns for 1959, 1960, and 1961. We therefore conclude that petitioner correctly reported on its 1960 and 1961 returns the sales transactions in question. Accordingly, we hold that petitioner is not entitled to a deduction of $126,441.50 in 1962 which could be carried back as a net operating loss deduction to taxable years 1959, 1960, and 1961. Decision will be entered for the respondent. Footnotes
1. The stipulation of facts states that sales to all five subsidiaries were voided. We must be governed by the stipulation. In fact, one of the subsidiaries, Builders of Communities, was not a party either to the sales agreement dated November 17, 1959, or to the rescission agreement dated November 11, 1963.↩